UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSH DOUGLAS                                                          CIVIL ACTION

VERSUS

MASTER SERGEANT ANGELA ANDERSON         15-00445-JJB-RLB

**RULING**

Before the Court is a *Motion for Summary Judgment for Failure to Exhaust All Available Administrative Remedies* filed by Defendant Shana L. Anderson.[1] Plaintiff Josh Douglas has filed an *Opposition*[2] to which Anderson has filed a *Reply*.[3] Due to the disputed issues of material fact concerning the exhaustion of administrative remedies, the Defendant's *Motion for Summary Judgment* is hereby **DENIED**.[4]

Due to the factual questions at issue, on August 1, 2017, the Court conducted an evidentiary hearing to resolve the disputed facts concerning exhaustion (i.e., Administrative Remedy Procedure(s)). Based on the evidence, including testimony of witnesses, the Court finds that Plaintiff has failed to exhaust his administrative remedies and his claims must be dismissed.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Josh Douglas ("Douglas" or "Plaintiff"), an inmate incarcerated at Dixon Correctional Institute ("DCI"), brings this 42 U.S.C. § 1983 action against Master Sergeant

---

[1] Doc. 68.
[2] Doc. 74.
[3] Doc. 75.
[4] Doc. 68.

1

Shana L. Anderson ("MSGT Anderson").[5] At approximately 5:00am on October 16, 2013, Douglas claims that he was repeatedly attacked by another inmate, Eric Gray.[6] According to Douglas, he had listed Gray as a known enemy from whom he needed protection.[7] At the time of the incident, Gray and Douglas were housed in the same Unit but on different Dorms: Douglas on Dorm L and Gray on Dorm G & H.[8] Douglas claims that on the morning of the attack, MSGT Anderson was stationed in the recreation room and Dorm L, and on two occasions allowed Gray access to Dorm L.[9] Each time Gray was allowed to enter Dorm L, he allegedly threw scalding water on Douglas, causing him 1st, 2nd, and 3rd degree burns.[10] On July 8, 2015, Douglas filed the instant lawsuit.[11] In his *Amended Complaint*, Douglas asserted a failure to protect claim against MSGT Anderson arising under the Eighth Amendment, and, in the alternative, a state law claim of negligence.[12]

In his *Amended Complaint*, Douglas specifically alleged that "[o]n January 6, 2014, [he] filed an ARP from the failure to protect. The ARP was accepted on January 22, 2014 and assigned DCI-14-28. On November 3, 2014, [he] was told his ARP had been rejected on February 2, 2014, on the basis that it was a disciplinary complaint. The ARP was refiled on November 17, 2014."[13] In her *Motion for Summary Judgment for Failure to Exhaust All Available Administrative Remedies*, MSGT Anderson raised the affirmative

---

[5] Doc. 48, p. 2, ¶6; p. 6, ¶¶34-39. Plaintiff Douglas has been represented by counsel throughout this federal litigation.
[6] Doc. 48, pp. 4-5, ¶¶17-26.
[7] Doc. 48, p. 3, ¶8.
[8] Doc. 48, p. 3, ¶¶11-12.
[9] Doc. 48, p. 3, ¶14; pp. 4-5, ¶¶17-19, 23-25.
[10] Doc. 48, p. 4, ¶20; p. 5, ¶¶26, 29; p. 7, ¶44.
[11] Doc. 1. In his *Complaint*, Douglas asserted his claims against Defendant Master Sergeant Angela Anderson. In his *Amended Complaint*, Douglas only asserted his claims against Master Sergeant Shana L. Anderson. Doc. 48.
[12] Doc. 48, pp. 6, ¶¶34-39; p. 7, ¶¶41-42.
[13] Doc. 48, p. 1, ¶2.

defense of failure to exhaust administrative remedies.[14] MSGT Anderson argued that because ARP No. DCI-2014-0028 only pertained to an alleged denial of due process rights, and contained no allegations regarding MSGT Anderson's alleged failure to protect Douglas from another inmate, Douglas had failed to exhaust his administrative remedies as to his failure to protect claim. In his *Opposition*, Douglas argued for the first time that, in addition to ARP No. DCI-2014-0028, he had actually submitted an additional three ARPs stemming from the October 16, 2013 incident.[15] Specifically, he claimed to have filed ARPs dated January 6, 2014 for failure to protect, January 27, 2014 for due process claims, and November 17, 2014 to cure any defect.[16] According to Douglas, of the four ARPs, only ARP No. DCI-2014-0028, which dealt with the denial of due process, was ever processed by DCI.[17]

The memoranda and evidence provided by the parties in support of and in opposition to the summary judgment motion shows that a genuine dispute of material fact exists regarding exhaustion. Hence, the Court has concluded that Defendant's summary judgment motion should be denied.

Because Douglas has survived summary judgment on exhaustion of administrative remedies, the Court conducted an evidentiary hearing on August 1, 2017 to resolve the remaining disputed facts concerning exhaustion of the administrative remedy procedures.[18]

---

[14] Doc. 68.
[15] Doc. 74. Douglas attached copies of the four ARPs to his *Opposition*. Doc. 74-1, pp. 4-5; 7; and 12.
[16] Doc. 74, pp. 1-2.
[17] Doc. 74, p. 4.
[18] *Dillon v. Rogers*, 596 F.3d 260, 272-73 (5th Cir. 2010).

**II.      LAW**

   A.   Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("P.L.R.A.") prohibits inmates from bringing 42 U.S.C. § 1983 actions until "such administrative remedies as are available are exhausted."[19] The purpose of the exhaustion requirement is to give an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and to encourage the efficient resolution of claims.[20] Section 1997e's exhaustion requirement is only satisfied if the prisoner "pursue[s] the grievance remedy to conclusion."[21] Because exhaustion is an affirmative defense, Defendant bears the burden of demonstrating that Plaintiff failed to exhaust available remedies.[22]

The Fifth Circuit has taken a "strict approach" to the exhaustion requirement.[23] In *Dillon v. Rogers*, the Fifth Circuit made it clear that "[i]f the plaintiff survives summary judgment on exhaustion, the [district] judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary."[24]

In Louisiana, an inmate must follow a two-step Administrative Remedy Procedure ("ARP") process to exhaust administrative remedies before filing suit in federal court.[25] The ARP process is codified in the Louisiana Administrative Code under Title 22, Part I, § 325. An inmate initiates the ARP process by completing a request for administrative remedy or writing a letter to the warden.[26] An ARP screening officer screens the inmate's

---

[19] Suits by Prisoners Act, 42 U.S.C. § 1997e (2013).
[20] *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)(quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).
[21] *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. July 24, 2001).
[22] *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).
[23] *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003).
[24] *Dillon*, 596 F.3d at 273.
[25] La. Admin. Code, Title 22, pt. I, §325 (2017).
[26] La. Admin. Code, Title 22, pt. I, § 325 (G)(1)(a)(i)(2017).

request and either accepts the request into the first-step or rejects it for one of ten enumerated reasons.[27] If a request is accepted, the warden must respond on a first-step response form within forty (40) days of receipt of the request.[28] If the inmate is dissatisfied with the response, he may proceed to the second-step of the ARP process by appealing to the Secretary of the Department of Public Safety and Corrections ("D.O.C.").[29] The D.O.C. Secretary must issue a response within 45 days from the date the request is received using a second-step request form.[30] The law is clear that exhaustion of administrative remedies occurs in one of the following three instances: "(a) when the relief requested has been granted; (b) when the second step response has been issued; or (c) when the grievance has been screened and rejected for one of the reasons specified in Subsection I, Grievance Screening."[31]

## III. ANALYSIS

During the evidentiary hearing, each of the parties presented evidence and offered witness testimony.[32] The evidence offered confirmed the fact that ARP No. DCI-0014-0028 pertained only to Douglas' due process complaint, and had been submitted to and accepted by DCI.[33] Accordingly, the Court finds that because ARP-DCI-14-0028 pertains only to due process it has no bearing on the claims Douglas has asserted in this case. In other words, Douglas' ARP No. DCI-0014-0028, which pertains solely to due process,

---

[27] *Id.* at §325(I)(1)(a)(i)-(ii).
[28] *Id.* at §325(J)(1)(a)(ii).
[29] *Id.* at §325(J)(1)(b)(i).
[30] *Id.* at §325(J)(1)(b)(ii).
[31] *Id.* at §325(F)(3)(a)(viii).
[32] Douglas offered a copy of La. Admin. Code, Title 22, pt. I, §325 (2013) into the record. Additionally, defense counsel only offered and introduced Defense Exhibit 1 into the record.
[33] When defense counsel asked where he discussed any complaint for failure to protect in ARP No. DCI-2014-0028, Douglas responded that it only dealt with due process. Defendant produced a DCI Memorandum on which Douglas acknowledged receipt of the Notice of Acceptance of ARP No. DCI-2014-0028. Douglas signed and dated the document on February 3, 2014. Defendant Exhibit 1, p. 8.

5

cannot satisfy his exhaustion requirement as to his failure to protect claim which is the subject of the instant lawsuit.

In addition to ARP No. DCI-0014-0028, Douglas testified that he had completed and submitted three other ARPs regarding the October 16, 2013 incident. Specifically, he testified to submitting an ARP dated January 6, 2014 for failure to protect, and an ARP dated November 17, 2014 to cure the defect of an ARP for failure to protect, failure to provide medical attention, and denial of due process (ARP No. 0014-0028).[34] Douglas also testified to submitting an ARP on January 7, 2014 for due process claims, although the ARP he introduced into evidence was undated.[35] Douglas stated that after he had written down what happened on the ARP form, he put each of the ARPs in an envelope and mailed them to the Warden. He also testified there were no witnesses who saw him mailing these three ARPs. Douglas further stated that he never received a response to any of these ARPs. It is undisputed that none of these alleged ARPs have been stamped "Received" or have been assigned a DCI-ARP number. Douglas also testified that blank ARP forms are readily available to inmates.[36]

Cheryl Washington ("Washington"), an 18 year DCI employee, testified that she has been responsible for processing all inmate ARPs at DCI for 12 years. Additionally, Washington stated that she does not know Douglas or Anderson, and that she has never been accused of losing, mishandling, or misplacing an ARP.

Washington explained that inmates put their ARPs in locked metal boxes on each unit. Only the Lieutenants have keys to open the metal boxes to retrieve the ARPs. All

---

[34] Plaintiff Exhibit 1 and Plaintiff Exhibit 3.
[35] Plaintiff Exhibit 2.
[36] Although Douglas agreed that an inmate could pick up a blank ARP and fill it in at any time to suggest that he had filed an ARP, when, in fact, he had not done so, Douglas testified that he would not do so.

6

legal mail, including ARPs, are sent to the Major's office. From there, the mail is sent to the mailroom, which is operated by mailroom officers, who sort and distribute the mail.

According to Washington, when she receives an ARP she does the following: she stamps the ARP with a received stamp; she reads the ARP and puts a code on it; she inputs the ARP information into a computer database that only she and D.O.C. Headquarters has the ability to access, and the ARP is assigned a number; she makes and sends a copy of the ARP to the appropriate Unit Head (i.e., one of two Wardens at DCI) to conduct an investigation; and she locks the original ARP in a file cabinet in her closet that is also locked. Once the investigation is completed, the Unit Head returns the results to Washington.

Washington testified that once she enters the ARP information into the computer and it is assigned a number, no one at DCI, including herself, can delete the ARP; only D.O.C. Headquarters has the ability to delete such information. She also explained that only the two Wardens at DCI would have the ability to unlock her closet using a master key. Washington stated that she retains all of her records for four years.

Washington explained that, in some instances, she has the ability to reject an ARP. Specifically, Washington stated that she can reject an ARP if the complaint concerns sexual abuse, the lockdown board, or the disciplinary board. And yet, even in these cases, the ARP still receives an ARP number, is receive stamped, and the original is kept in her secure file cabinet. When an ARP is rejected, Washington sends the rejection to the offender with documentation for him to sign, acknowledging that he received the rejection, and to return to her. However, when an inmate does not sign and return the form, Washington stated that she will not have a copy of the inmate's acknowledgment in

7

the DCI-ARP records. When asked, Washington told the Court that she does not follow-up with inmates in order to get them to accept the rejections and return them to her.

Washington testified that she had searched all of DCI's ARP records to see if there were any records related to the three ARPs that Douglas claimed he filed. In her search, she found only two ARPs that had been filed by Douglas: one filed in 2012—ARP No. DCI-2012-0809, regarding time computation, and one in 2014—ARP No. DCI-0014-0028, which pertained to due process. Washington explained that she was at DCI when both of these ARPs were filed. She also testified that after reviewing DCI's records, there were no ARPs filed by Douglas on January 6, 2014 for failure to protect, on January 27, 2014 for due process, or on November 27, 2014 to cure an ARP defect. Based on her knowledge, none of these ARPs were sent through the DCI ARP process.

The Court finds itself in agreement with Washington based on Douglas' own testimony regarding his State Court *Petition for Judicial Review*, *Josh Douglas, Jr. v. Warden Dannel Vannoy, Dixon Correctional Institute*, No. 633787, 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.[37] Douglas' *Petition for Judicial Review* was received by the 19th JDC on September 24, 2014, and arises out of the October 16, 2013 incident.[38] In his *Petition*, Douglas asserted that he had been denied due process and the right to medical treatment. Douglas testified that after he received a request from the 19th JDC for proof or information that he had exhausted his ARPs, he sent a letter to Mrs. Debbie Luck dated October 21, 2014 in response to her request. In the letter, which was introduced as part of Plaintiff's Exhibit 21, Douglas stated "[s]o as

---

[37] Plaintiff Exhibit 22.
[38] The Clerk for the Commissioner's Court of the 19th JDC received a copy of the Plaintiff's *Petition* on October 9, 2014. Plaintiff Exhibit 22, p. 1.

8

for the (A.R.P.s) **I did two of them. One on (Medical) and the other one on '(Due Process).'**[39] Douglas testified that he did, in fact, provide copies of these ARPs to the 19th JDC as part of his letter.[40] The medical ARP was signed by Douglas and dated January 24, 2014, and the due process ARP was signed by Douglas and dated January 27, 2014.[41] Neither of the ARPs had been stamped "Received" or assigned a DCI-ARP number.

The Court finds that Douglas' admissions in his state court case clearly resolve the factual dispute in the pending matter. According to Douglas, he had only filed two ARPs with DCI as of October 21, 2014. Of those two ARPs, Douglas has only asserted having filed one of them in the instant matter—the January 27, 2014 due process ARP. Importantly, in his letter to Mrs. Luck, Douglas made no mention of having filed an ARP on January 6, 2014 for failure to protect, as he does in the instant matter; the Court finds that Douglas would have known about his January 6, 2014 ARP for failure to protect at the time he wrote his letter to Mrs. Luck in October of 2014.[42] Accordingly, the Court finds that Douglas never submitted an ARP to DCI on January 6, 2014 for failure to protect.

As for the remaining ARPs, the Court finds that Douglas has offered no evidence to refute Washington's testimony that once she receives an ARP, it is stamped "Received" and assigned an ARP number. Therefore, because the contested ARPs lack this critical

---

[39] Plaintiff Exhibit 21, p. 2. (emphasis added). Douglas testified that he wrote this statement in his letter.
[40] Copies of these ARPs were submitted as part of Plaintiff's Exhibit 21 on pages 4-5.
[41] It appears to the Court that the ARP for due process dated January 27, 2014 and submitted with his *Petition for Judicial Review* (Plaintiff Exhibit 21, p. 5) is the same as the undated ARP for due process that Douglas claims to have submitted on January 27, 2014 in this case (Plaintiff Exhibit 2). The Court shall treat the two as the same ARP based on Douglas' testimony.
[42] The Court further observes that Douglas also failed to inform Mrs. Luck about his January 6, 2014 due process ARP (i.e., ARP No. DCI-0014-0028).

9

information,[43] the Court finds that Douglas' argument that he submitted ARPs dated January 27, 2014 for due process and November 27, 2014 to cure an ARP defect must fail. While it gave the Court some pause that Washington could not explain why the "Rejected" stamp was in a different spot on the copy of the ARP No. DCI-0014-0028 that she supplied for the evidentiary hearing than on Plaintiff's copy of ARP No. DCI-0014-0028 submitted in opposition to the summary judgment motion,[44] the Court finds this does not refute the validity of the process that Washington employs when she receives an inmate's ARP. Nor does Douglas' claim that he never received notice of the rejected ARP No. DCI-0014-0028 defeat the legitimacy and accuracy of DCI's ARP process.[45] Williams clearly explained that if an inmate, such as Douglas, refuses to sign the form acknowledging receipt of the rejected ARP, then the notice of acceptance of rejection form would not be in the ARP record.[46] Therefore, the Court finds that Douglas has failed to come forward with competent evidence showing that he did, in fact, submit an ARP dated January 27, 2014 for due process and November 27, 2014 to cure an ARP defect.

The Court further finds that even if Douglas could have shown that he did, in fact, file the three additional ARPs, Douglas never indicated in the letters that he sent to

---

[43] And, as previously discussed, the DCI database only produced two ARPs filed by Douglas: ARP No. DCI-2014-0028 (due process claims) and ARP No. 2012-0089 (time computation).
[44] Plaintiff Exhibit 5.
[45] Defendant Exhibit 1 at page 9 is a printout of the input screen for ARP No. DCI-2014-0028 which shows that this ARP was rejected because it was as Disciplinary Board Appeal. The disposition date was February 10, 2014.
[46] Williams also testified that she responded to every letter that Douglas sent to her regarding his ARPs on the same day that she received his letters. *See, e.g.,* Plaintiff Exhibit 9. In support of the summary judgment motion is a letter signed and dated by Washington on July 17, 2014 that was written in response to Douglas' letter (Doc. 68-3, p. 7; Plaintiff's Exhibit 6) in which she explained that his ARP No. DCI-14-0028 had been rejected because the ARP process does not address disciplinary board issues. Doc. 68-3, p. 8. In Plaintiff's Exhibit 9, there is another response by Washington on February 13, 2015 explaining that ARP No. DCI-14-0028 was initially accepted for lack of due process, but then it was determined it should have gone before the disciplinary board. A similar response was prepared on April 6, 2015 and also offered in support of and in opposition to Anderson's summary judgment motion. Doc. 68-3, p. 17; Doc. 74-1, p. 23.

Secretary LeBlanc that he was seeking permission to proceed to the second step.[47] Therefore, even if these three additional ARPs had been filed, because Douglas did not proceed to the second step of the ARP process, he failed to properly exhaust his administrative remedies prior to filing suit.

Overall, the evidence offered by and through Douglas shows that he has presented two different courts with two different tales regarding the ARPs he allegedly filed at DCI. On the one hand, he told the Commissioner at the 19th JDC that he had only filed two ARPs as of October 21, 2014.[48] Notably, he did not mention ARP No. DCI-0014-0028. On the other hand, Douglas has told this Court that he actually filed three ARPs by October 21, 2014, including ARP No. DCI-0014-0028. Of the ARPs Douglas claims to have filed in both courts, only one—the January 27, 2014 ARP for due process—is identical. In both cases, however, the January 27, 2014 ARP lacks a DCI receive-stamp and a DCI-ARP number. When given the opportunity to explain the discrepancy, Douglas declined to do so. Accordingly, due to the blatant discrepancies between the number and types of ARPs Douglas claims to have filed in this case and the 19th JDC, the Court finds no merit in Douglas' assertion that he submitted ARPs on January 6, 2014 for failure to protect, on January 27, 2014 for due process, or on November 27, 2014 to cure an ARP defect.

---

[47] When asked during the hearing whether he had asked to proceed to the second step in these letters, Douglas responded that he was just letting him know that he had filed his ARPs and had not heard anything about them. The letters are attached to Douglas' *Opposition*, Doc. 74-1, pp. 16-19.
[48] This occurred through Douglas' correspondence to Mrs. Luck with the 19th JDC's Commissioner's Court. Plaintiff Exhibit 21, pp. 1-3.

**IV.    CONCLUSION**

The Court finds that Defendant Master Sergeant Shana L. Anderson's *Motion for Summary Judgment for Failure to Exhaust All Available Administrative Remedies* is hereby DENIED.[49]

The Court further finds that after considering the evidence and testimony offered at the evidentiary hearing, Plaintiff Josh Douglas has failed to exhaust his administrative remedies on his failure to protect claim.[50]  Accordingly, Plaintiff Josh Douglas' claims against Master Sergeant Shana L. Anderson shall be dismissed without prejudice.

Signed in Baton Rouge, Louisiana, on September 13, 2017.

**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[49] Doc. 68.
[50] As previously discussed herein, because ARP No. DCI-0014-0028 pertains only to due process, it has no bearing on whether Douglas exhausted his failure to protect claim.